The first case this morning is because of Del Moine v. Larry Bretsnyder, and we have Ross Norman and Sherry Shanahan. Good morning. May it please the court. Shanahan. As the court is well aware, this was a bench trial in which, at the end of the bench trial, Judge Beresivit entered an order finding my client guilty, but as part of his findings, he made numerous findings of fact as well. Other than the fact that I'm going to just briefly hit some of the facts, I think, and as they relate to my legal arguments, I'm going to save it for sometime, at least I hope. I think the facts that are relevant at this juncture is, first and foremost, obviously, the defendant knew about the order of protection. I mean, I think it's clear from the record. I think it's clear from the testimony. I think that is an indisputable fact, and I'm not going to stand here and say that it was otherwise. What is in dispute, though, and one of the critical issues, I think, factually speaking, is the fact that the defendant testified at trial and even through the DVD interview, that it was taken of him almost contemporaneous with this crime, was the fact that he said he was invited to Kara Carver, who was the victim in this case, or one of the victims in this case, was invited to her house. This was backed up, then, I believe, in testimony by virtue of the phone calls that he said he made to her, gave specific times, gave specific places, gave specific phone numbers. Kara Carver admitted that she received a telephone call at about 10 o'clock that night. There's a drastic dispute between what she says was said in that phone call and what my client said was in the phone call. What does that matter? What does it matter what was said on the phone call? Pardon? What does it matter? Well, I think it does matter, because what my client testified to in that phone call at 10 o'clock was that, in essence, what was said was, honey, I love you, I want you to come back home. He called her on that day because it was her birthday, wished her a happy birthday. She said, you know, I miss you, I want you to come home. Then he called her and he said, I'll be home after the bar is closed, in essence. He called her again at about 1 o'clock. She said she did not receive the phone call because she had lost her cell phone. But he testified, my client testified, Mr. Bretschneider testified, that he called from his friend's phone number, he was able to give the phone number, he was able to deal with this. I believe it was about a three-minute phone call. She said she never received it. In that phone call, he said, he told her, I'm not coming home at 1 when the bar is closed in this area. I'm going to go up to Troy before the bar is closed at about 3. She said she never got it. What is also interesting, and I argued this to Judge Beresivic, and I'm telling you about this as well, is then, about 15 minutes later, there were two phone calls from Tara Carver's phone back to the phone number of the situs of my client's first phone call and the cell phone he used for the second phone call. So, you know, I think that there is truly an issue of fact about what had happened and what was testified to and what these phone calls were about. In addition, one of the other facts that came out and I thought was relevant in the case and relevant to the appellate part of this case and to Judge Beresivic is the question of how he gained entry into Tara Carver's house. She testified about that she believed he climbed through the door in light of the fact that she invited him in because I walked up to the front door, opened the front door, and walked right in. Judge Beresivic, in listening to this various testimony, and I put this in my brief as well because I think it's interesting, what he said was in his finding on his order was, I'm not convinced by the evidence how the defendant gained access and I'm not certain of the defendant's intent upon entering. Skipping down a bit, the testimony of the two victims is not consistent as to the specific flow of facts. What is important is, and this leads me into really what I believe to be the crux of this matter, and what makes this a good case for this court to decide is this is not as many times, I've been in front of this court a lot, but there are times I have been on criminal cases, it's usually a question of, well, we're arguing manifest ways. The testimony was inconsistent and so there should be reasonable doubt. This case is not that kind of case. I think that the court can reasonably infer that there was reasonable doubt underlying this case. As to what issue? As to the question of... The authority to enter? Yeah, authority to enter, exactly, exactly. The R protection, with the pending R protection, you think that that's an issue here? I think it is an issue. I think it's specifically... How can a private person supersede the court order in an R protection and relinquish the issue of authority here in this case? Well, it leads me into a couple of different areas. First of all, as a matter of somewhat common knowledge, orders of protection, order of protections are really only as good, and I'm talking in a practical sense, I'm not talking necessarily in a legal sense, but they're only as good as how much the victim wishes to use... What's it say on the R protection itself, though? Does it say something, just the opposite effect? It does. It does. But my argument to this court would be this. It does say that. And once again, I can't play a card that I don't have. But it's a situation where if, as was the testimony in this case, where she had had an order of protection against him before, in a couple of days or a week or whatever, go by and she says, look, this is blowing, come back and let it be. That's very common. It is very common, but you're inviting us to ignore the legal effect of an order of protection if we do believe that she gave him consent. That's what you're asking us to do. Correct? Is that correct? Yes. But it's not, I don't think, I don't think it's as simple as that. I don't think it's as simple as that, because in order for the court to decide that issue and to say that if the victim in this type of case has no authority to say you can come back in and that would obviate, you know, it would obviate the authority issue, like in, say, a burglary or an on-basis case, then what you're doing is you're basically setting up, you know, something I believe would be against the public policy. You're then saying that the victim, by inviting the person in, is also a contravention of the law and is also subject to prosecution for violation of that same order. It's a court order. Why isn't the victim just as liable for violating that order as the person who enters? That's not the issue that we are dealing with. Well, but if you accept the finding on the law or the matter of law that Judge Barrow-Civic set down, he basically said it's a per se rule, not specifically saying, but that's exactly the import of it, that regardless of scienter of the defendant, if he enters after clearly being said you can come in, first you've got a question of scienter on the part of the defendant, and second of all, then you're making, in essence, the victim either a criminal by violating the order of protection or an accomplice to whatever happens after that. What is also interesting, and I would point to reasons why I think that this court, although it may be a situation where the court would want to say, you know, it is a court order, it is, you know, it should be something that should be a pact, and I am mindful of the, if you will, the political ramifications of saying, well, it doesn't make any difference what the order of protection says, the person can do whatever. The Reid case, which was decided by the Supreme Court, dealt with an issue of a case very similar in fact pattern, that it is clear from reading the facts in the Reid case that the husband or boyfriend, you know, was excluded by virtue of an order of protection. He came in anyway, committed and killed the victim. What happened then is in terms of the sentencing, they used the home invasion statute more or less  Now, what the Supreme Court did was then look at the statute that we are all looking at, we are all trying to figure out, and said, well, we are going to reverse the conviction or reverse that and not do the sentencing enhancement based upon the fact that he had a property interest in this property, and so it would not be the dwelling place of another. What makes it even more interesting, what makes this case, I think, very germane, is the fact that then Justice Miller, in his dissent, said, in essence, this case is really pretty simple, in my opinion. It's an order of protection, and so it is a per se, he should stay out, and it makes no difference. But you've got to remember, this is the dissent. The Supreme Court could have decided that case and said, this is simple. An order of protection means stay out regardless. But they didn't accept that notion as the appropriate way to deal with this statute. In addition, I also quoted the Bush case, which is also another Illinois Supreme Court case, and what this deals with then is the situation of sort of a scienter, sort of a knowledge question, and the court in Bush talked about the fact that a person who gains access to a dwelling and said to be authorized entering, if he gains access to the intent to commit criminal acts, his entry is unauthorized and the consent is given, is vitiated. But conversely, he's going to say, conversely, where the defendant enters with innocent intent, his entry is authorized and criminal actions thereafter engaged in but did not change the status of his entry. This is a situation where I believe that Judge Beresivit, as the trier of that, and as the, you know, as the judge presiding, was very conflicted about the question of how he gained entry and what was his intent. In fact, he even says in his thing that he believed that the intent was, if I may be so bold as to say, not there. And he lists reasons why he believes that there was innocent intent. When he showed up, and this is clear in the record, he showed up, he got dropped off by this friend, whose phone he used and I was just talking about. He got dropped off, he had no weapons with him, he had no means of leaving. It's the middle of, it was 3 a.m. or thereabouts, and he walks into the house, as he testified, he walks into the house, into a dark house. Well, didn't he answer his own question by finding your client guilty as far as whether or not there was a requisite intent? In his order, I'm reading the second main paragraph, last sentence, asks the question to himself, I guess, did he have a criminal intent other than violation of an order of protection when he entered or did he develop a criminal intent after he entered the question mark? It seemed like he answered his own question when he said, I find the defendant guilty of home invasion in counts 2 and 3. Well, no, I disagree, respectfully disagree, Your Honor. Because what he said, what Judge Barrett-Civic said in his order and in the censusing hearing, or I'm sorry, not the censusing hearing, the post-con motion hearing, is he kept reiterating the fact that what I am finding is that he's guilty of home invasion based solely on the fact that there was an order of protection in place. So as a matter of law, there's no authority. And as he says, and he says throughout both of these situations, that he's very conflicted about the facts. Judge Barrett-Civic said he did not bring a weapon with him, he had no escape plan, he was on foot, no accomplice waiting. Did he have a criminal intent other than violation of order of protection when he entered or did he develop it? Testimony to victims is not consistent as to the flow of facts. I mean, what he's saying is if this court were to set, were to decide the issue and say an order of protection isn't necessarily, per se, finding on the question of authority, I think truly the judge would have had to find him not guilty because everything else was in conflict. And he could not, it seems to be, could not decide the issue beyond a reasonable doubt as to whether he was invited in or not invited in or whatever. I want to make sure I understand what your position is. There's two main issues. One is the authority to enter and the second is the intent then to. Nick, you're focusing on the lack of authority to enter issue. Is that correct? Well, yes. My main thrust is that there should not be a per se rule. Okay. However, I think, I think that it would be remiss of me not to deal with the question of that. There's a plethora of cases, most of it cited by opposing counsel, saying that the authority, the intent, and those issues sort of have been bootstrapped. And the home invasion has been bootstrapped into a lot of the same case law that deals with burglary statute. And a lot of it has to do with intent. And I think that intent, I think intent does have a measuring because even if the court says, okay, this court says, okay, we're going to throw out the per se rule. Okay. But then why was he in there? Okay. If he was in there, as the state sort of argued in the trial court below, that he was hacked off, he knew that this other guy was there. This was, this used to be his good friend. Now he's, now he's with my girl, although they denied that they were romantic. He's with my, he's with my girl. So he went in there basically on a vengeance mission. Well, I think as Judge Beresivic rightly points out, that is just, that is just a terribly, terribly ill-conceived plan. But that was his plan, to show up with no means of leaving, no weapon, no nothing, going into a house with two people who he was, had a conflict with. I mean, that's just a terribly, terribly ill-conceived plan. It sounds also pretty incredulous that she would invite him over when she's in bed with another man. Well, my client's position from the start, in fact, even in the DVD interview, you know, that same day or hours after that he was arrested on the same day, his position always was that this was, this was an attempt to track him. This was, this was a plan between these two people who ended up being the victims to, to trap him into doing something or to get him in trouble. Let's just go, we'll have the opportunity for rebuttal on that. Okay, well thank you. Ms. Shanahan. May it please the court, counsel. My name is Sharon Shanahan and I represent the people of the state of Illinois. I had all sorts of things that I wanted to say about this first issue, but given the fact that defense counsel has said that he is asking this court to ignore the illegal effect of an order of protection, I don't think there's a whole lot more I can say other than you can't do that. I do, one thing I want to start out with is, is the actual language of the order of protection, which the defendant received, defense counsel acknowledges he received it, he knew what was in it. And that order said, only the court can change this order. The petitioner cannot give you legal permission to change this order. If you go near the petitioner, even with the petitioner's consent, you may be arrested. He had that order, he knew what it said, he went to her house, that is in and of itself sufficient to affirm this. Orders of protection are orders of the court, they are not orders of the victim. Tara cannot waive that protection, even if she wanted to, and the defendant had no authority to enter that home and Tara had no authority to give him the authority to enter that. So the fact that this order of protection was in effect is in and of itself sufficient to affirm this charge of home invasion. Now Reed, which the defendant has discussed in this court, deals with an entirely different factual situation and legal situation. Factually, the defendant in Reed had a tenancy interest in the home in question. It was a home that he and his wife had purchased together, they were getting a divorce, it wasn't final yet, she was living in it, he was not. Here, if the defendant had an interest in this home, it had clearly been extinguished. First of all, Tara obtained this house from a friend of hers. There was no police. I agree with what you're saying here, but even if you have a tenancy interest, if there's an order of protection, you can't go in. Right, I agree. Which goes on to the other thing that distinguishes Reed is that Reed was dealing with the portion of the statute that deals with dwelling place of another. And they said it wasn't a dwelling place of another. We're not dealing with that portion of the statute. We are dealing with the portion of the statute that says entered without authority. And I think the logical synthesis of the home invasion statute and the law regarding orders of protection, and the conclusion which the court reached in Reed, is that an order of protection might not affect the question of whether a home was the dwelling place of another, but it does affect a party's authority to enter. And I think that's what we're dealing with here. Not only A, he didn't have an interest like the defendant in Reed did, and B, it's an entirely different portion of the statute. You've confessed the issues as far as multiple home invasion convictions. I think I did more than confess it. I raised it. Yes. Do you think that this requires a new sentencing hearing? Absolutely, because they have to be consecutive sentences. I mean, he has to get consecutive sentences. There are other sentences that he's now serving concurrently. One of those has to become a consecutive sentence. So, yes, I think it has to be remanded. I have just a few other points I kind of just wanted to agree with the court on. Justice Chapman, I think I agree with you that it's totally illogical to believe that Tara and Mr. Smelser came home, went to bed, left the door unlocked, expecting the defendant to arrive when on previous occasions the defendant had threatened to kill Mr. Smelser by cutting his throat. In fact, he had climbed through a window, put a knife to Mr. Smelser's throat, and said he was going to kill him if he ever found him in bed with his girlfriend again. So to think that they just said, yeah, he's coming over after a while. Let's just turn off the lights, go to bed, and let him come in and try and kill you. The other thing I want to point out is that at trial the defendant said that there were several communications with Tara throughout the night. He called her later on, the most particular one. He called her later on to tell her that he'd be there at 3 o'clock instead of 1 o'clock. But the DVD that, as counsel admits, was made contemporaneously with the arrest said his, the defendant's language was that the first and only time, that's his language, the first and only time he called Tara was at 10 o'clock. So in that DVD, which was made at the time of the arrest, he said he only called Tara once. It is not even remotely logical that Tara and her, and Mr. Smelser sat there in the dark for two hours waiting for the defendant to show up so that they could attack him and beat him up. And finally, as far as the question of intent, I think Justice Bomer, you and I agree that the judge answered his own question when he found the defendant guilty. Trial courts are presumed to know the law and apply it correctly. And I think that by finding the defendant guilty that he answered that question. And I would go on to say a lot of things that the judge in this case wrote in that letter, it's like if you had sat there and transcribed the jury's talking about a case. It doesn't matter what you're thinking as you're reaching this point.  It doesn't matter during jury deliberations whether jurors are saying, well, do you think he had the intent? Because I thought that they kind of went back and forth and another juror said, what matters is the verdict. The verdict was that he found him guilty beyond a reasonable doubt. Given the fact that he's presumed to know the law, I think he, as you said, he answered his own question. The court has no other questions. Thank you, Ms. Shanahan. Mr. Starman, you have the ball. I'd like to deal with, real briefly, the last issue that Ms. Shanahan raised. Obviously, if this were a jury case that had been tried to a jury and the jury was back in deliberation, we would not know at all what was actually discussed. But, hypothetically, if we had a reporter in there and the jury said, well, you know, we're not certain about whether he had the right to be there or not. We think this was a bloody, nasty, ugly thing. We're just going to find him guilty. We don't care. We don't care. We're going to skip the whole issue of authority. We can't make up our mind. We're just going to do that. Obviously, the court would be concerned with the fact that they would have ignored an element and kind of did a two out of three is close enough kind of situation. But that's not this case. What we have before us as part of the record is Judge Beresivic, who made specific findings of fact and specific findings of law to decide how this case should be, you know, to make his decision. And I think that, you know, I know I've cited for you portions of his order, but it's also interesting, too, that this is in his ruling, his oral ruling, which is in the record as well, on the post-trial motion. And he's, again, reiterating. He says, I reaffirm my argument or my rulings during the trial, deny that part of the motion, and reiterate what I said in my order. The two victims, when they testified, were not consistent with what happened. And I am not certain how Mr. Breitschneider got into the house. I'm not saying he was invited, and I'm also not saying that he came through the window, which was the state's argument. This is a situation where this court has to decide the authority issue. If you decide the authority issue, against my position, hopefully not in my court, then, you know, then this case is over. If you find, however, that the authority issue is in my favor, then we're in a situation where I think the court has to adopt or should adopt the uncertainty of Judge Beresivit. And say, there was, beyond the question of this authority, there was no other evidence that he found beyond a reasonable doubt that could have found this person guilty of home invasion. As I said, and I'm going to be extra special brief on this thing. The Reed case is not that distinguishable. I think the Supreme Court had every opportunity to decide this case on the specific issue we're dealing with today. And they chose not to. Yes, they decided on the question of dwelling place of another, no doubt. However, they could have decided this case specifically on this issue and made it super easy. In fact, I mean, Justice Miller's specific language was, unlike the majority, I would conclude that a defendant who violates an order of protection by entering the subject premises has entered the dwelling of another as prohibited by the home invasion statute. Entry of a residence made in violation of a court order is done without authority and, moreover, can represent as great a risk to the personal safety of the occupants as the unauthorized entry of a stranger's house. That's exactly what the state is arguing, both in trial court, what the judge decided, and what Machine Hands are doing today. Supreme Court did not adopt that position as the majority opinion. In fact, Justice Heffel, who wrote the majority opinion, talks about, we know, however, that despite our holding today, which was on the issue of dwelling place of another, a person such as defendant who violate orders of protection will continue to be subject to the full range of punishments available to the state under both the Criminal Code and Domestic Violence Act, providing that violations of protective order may be prosecuted in conjunction with underlying criminal charges or through separate civil or criminal contempt proceedings. He was never charged with violation of order of protection. Now he's precluded by double jeopardy. I think that to find other than that there was authority just is unconscionable. Thank you. Thank you, Mr. Stoner. Ms. Shanahan will take the matter under advisement.